### WILLIAM H. HASKELL MFG. CO. v. NELSON BLOWER & FURNACE CO. Petition of COMMERCE TRUST CO.

(District Court, D. Massachusetts. August 10, 1921.)

No. 949 Equity.

1. Corporations ⟫415—Directors may mortgage all of corporation's property.

Under Corporation Law of Massachusetts, § 4f, providing that a corporation is authorized to hold, purchase, mortgage, or lease real or personal property as the purposes of the corporation may require, and section 19, providing that the board of directors may exercise all of the powers of the corporation except such as are conferred by law or by the by-laws of the corporation on the stockholders, the directors of the corporation, there being no statute or by-law to the contrary, may execute a valid mortgage on all the property of the corporation for the purpose of furthering its interests in its business.

⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Corporations ⇐115—Authority to president to give mortgage limited to debt specified.**

A resolution of the board of directors of a corporation authorizing its president to execute a mortgage for $25,000, to secure a note to be given for money borrowed, *held* not to authorize nor validate a provision in the note making the mortgage security for prior loans, or giving the lender a lien therefor on any property which might come into its possession.

**3. Corporations ⇐559(5)—Invalid claim not validated by decree reserving rights on surrender of property to receivers.**

A provision, in a decree appointing receivers, for a corporation that the surrender to the receivers of property of which a creditor had taken possession should be "without prejudice to such rights as it may have acquired by virtue of such possession," *held* not to entitle the creditor to enforce a claimed lien on the property or its proceeds which had no legal validity.

**4. Corporations ⇐547(1)—Liens given on any property in possession of creditor held not to extend to property constructively in its possession.**

Where a sheriff was in possession of property of a corporation under an attachment, an arrangement with the sheriff or with his custodians to hold possession subject to the attachment for a mortgagee for the purpose of foreclosure *held* not to give the mortgagee possession for the purposes of other claimed liens.

**5. Corporations ⇐547(1)—Possession under mortgage held not attributable to other claimed liens.**

Possession of property taken by a mortgagee under a mortgage securing a note and providing that on payment of the amount of the note the mortgage should be void and that in case of sale of the property any surplus after payment of the mortgage debt should be paid to the mortgagor, *held* not to constitute possession for the purposes of other liens claimed by the mortgagee.

In Equity. Suit by the William H. Haskell Manufacturing Company against the Nelson Blower & Furnace Company. On petition of the Commerce Trust Company. Petition granted in part.

Robert G. Dodge, of Boston, Mass., for petitioner.
Judd Dewey, of Boston, Mass., for receivers.

BINGHAM, Circuit Judge. In this proceeding the Commerce Trust Company seeks to establish a mortgage for $25,000 given it by the Nelson Blower & Furnace Company on the 23d day of August, 1919, in which the latter company purports to mortgage all its corporate assets, tangible and intangible, patents, patent rights, trade-marks, trade-names, good will, and other evidences of good will of whatever kind and description, and all its leaseholds, plant, and equipment, including all its machines and machinery now owned or which may hereafter be acquired by it while any sums secured by this mortgage or any interest thereon remain unpaid; the same being subject to two prior mortgages to the Marlin Rockwell Corporation.

The property covered by the above mortgages has been sold by the receivers. The sum derived from the sale of property subject to the two mortgages to Marlin-Rockwell Corporation is not sufficient to satisfy the balance due on them. The sum derived from the sale of the property subject to the mortgage to the Commerce Trust Company, and

⇐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

not subject to the mortgages to Marlin-Rockwell Corporation, is more than sufficient to satisfy the mortgage of the Commerce Trust Company.

The petitioner also seeks to assert a lien on this balance and apply the same in satisfaction of what remains due it on three prior notes given by the Nelson Blower & Furnace Company to the petitioner. Two of the notes are dated August 1, 1919, for $25,000 each, and due October 1 and November 1, 1919, respectively. The third note is for $8,247.42 and is dated August 19, 1919, and due October 18, 1919.

[1] The facts in relation to the mortgage of August 23, 1919, are as follows:

On August 22, 1919, a meeting of the directors of the Nelson Blower & Furnace Company was duly called and held. Three of the four members constituting the board were present—Messrs. Nelson, Marshall, and Stone—and it was voted:

"That the corporation borrow from the Commerce Trust Company a sum not exceeding twenty five thousand dollars ($25,000) and that the president, Albert H. Nelson, be authorized to sign a note for the amount so borrowed upon such terms as seem expedient and that he be authorized to execute a mortgage of all the personal property of the corporation to the said Commerce Trust Company for a sum not to exceed twenty-five thousand dollars ($25,000) in the name and behalf of the corporation and that the seal of the corporation be attached thereto."

Albert H. Nelson was the president of the company. He was also a director and a stockholder owning 533 out of 1055 shares of common and preferred stock; both classes of stock having voting powers. Acting under the authorization of the above vote, Nelson obtained a loan of $25,000 from the trust company and gave the mortgage signed "Nelson Blower & Furnace Company, by A. H. Nelson, President." The note secured by the mortgage was a collateral note containing sweeping provisions. It was signed by the Nelson Blower & Furnace Company, by A. H. Nelson, President. It also bore the following indorsements: "A. H. Nelson," "Nelson Machine Co., by A. H. Nelson, Pres." The note and mortgage, the two notes of August 1, 1919, and the note of August 19, 1919, will be found in petitioner's Exhibit 1, all of which are referred to and made a part of this finding.

At the time the note and mortgage were negotiated, a certified copy of the above vote of the board of directors was given to the petitioner.

The by-laws of the corporation contain the following provisions relating to the board of directors:

"Section 12. In addition to the powers and authority by these by-laws expressly conferred upon them, the board may exercise all such powers of the corporation and do all such lawful acts and things as are not, by statute or by the agreement of association and the articles of organization or by these by-laws, directed or required to be exercised or done by the stockholders."

Section 13 contains a list of express powers, the eighth one being:

"To delegate any of the powers of the board in the course of the current business of the corporation to any standing or special committee, or to any officer or agent, or to appoint any persons to be the agents of the corporation

with such powers, including the power to subdelegate, and upon such terms as they deem fit."

Albert H. Nelson at the time these notes were executed was the general manager as well as the president of the Nelson Blower & Furnace Company. An agreement employing him as general manager for one year was entered into August 19, 1918, and thereafter extended for an additional year. This agreement will be found in petitioner's Exhibit 4, which is made a part of this finding.

In the articles of agreement and organization of the corporation appear the following:

"The property and affairs and business of the corporation shall be managed by a board of directors, who may exercise all such powers of the corporation as are not by law or by the by-laws required to be otherwise exercised. Without restricting the generality of the foregoing, the board of directors shall have power to purchase any property which the corporation may have the right to acquire, and to enter into any contracts which they may deem advantageous to the corporation, and fix the price to be paid by the corporation for any such property; and also shall have power, without the vote or assent of the stockholders, to sell, lease, or otherwise dispose of, and transfer, unless it is otherwise specifically provided by law or by this agreement, any or all of the property of the corporation."

The by-laws also contain the following provisions:

"Section 24. The president shall be the chief executive officer of the corporation. He shall preside at all meetings of the stockholders and directors. He shall have general and active management of the business of the corporation, and shall see that all the orders and resolutions of the board are carried into effect, subject, however, to the right of the directors to delegate any specific powers, except such as may be by statute exclusively conferred on the president, to any other officer or officers of the corporation."

"Section 26. He shall, in addition to the foregoing specific powers and duties, have the general powers and duties of supervision and management usually vested in the office of president of a corporation."

A Massachusetts corporation, under the Act of 1903, c. 437, § 4(f), is authorized:

"To hold, purchase, convey, mortgage or lease within or without this commonwealth such real or personal property as the purposes of the corporation may require."

Section 19 provides:

"The board of directors may exercise all of the powers of the corporation, except such as are conferred by law, or by the by-laws of the corporation, upon the stockholders."

And section 40, so far as here material, provides:

"Every corporation * * * may, at a meeting duly called for the purpose by a vote of two-thirds of all its stock, or, if two or more classes of stock have been issued, of two-thirds of each class of stock outstanding and entitled to vote, or by a larger vote if the agreement of association so requires, change its corporate name, the nature of its business, the classes of its capital stock subsequently to be issued and their voting power, or make any other lawful amendment or alteration in its agreement of association or articles of organization, or sell, lease or exchange all its property and assets, including its good will and its corporate franchise, upon such terms and conditions as it deems expedient."

275 F.—14

On September 26, 1919, the Nelson Blower & Furnace Company was put into the hands of receivers by a decree of this court. The receivers contend that the mortgage, being or all the property of the corporation, including its good will, is invalid for the reasons: (1) That the authority to mortgage given to the corporation under section 4(f), supra, relates to authority exercised as an ordinary incident of carrying on the business of a manufacturing corporation, and that a mortgage of all the property of a corporation calls for the exercise of authority in excess and beyond that ordinarily incident to the carrying on of the business of such a corporation; and (2) that, while a corporation may, at a meeting duly called for the purpose, by a vote of two-thirds of its voting stock, sell, lease, or exchange all its property and assets, including its good will, the authority conferred by section 40 by implication prohibits the directors from undertaking to mortgage all of its property.

So far as I am able to learn, these provisions of law have never been construed by the Massachusetts court, but it seems to me that section 4(f) vests in the corporation power to convey, mortgage, or lease the whole or any part of its property. This section does not undertake to define how these powers shall be exercised; that is provided for in other sections. By section 19 authority to exercise all the powers of the corporation, except such as are conferred by law or by the by-laws upon the stockholders, is vested in the board of directors. The only section relating to powers which are to be exercised by the stockholders is section 40. That section points out how fundamental changes in the organization of a corporation may be brought about, such as a change of name, change in the nature of the business, and changes involving a sale, lease, or exchange of all the property and assets of the corporation, including its good will. The execution of these powers it confers on the stockholders, at a meeting duly called for the purpose, by a two-thirds vote. A sale or lease of all the property and assets of a corporation looks to the determination of its business; and the power to exchange all of its assets is in furtherance of the power conferred permitting a change in the nature of its business. The word "mortgage" is used in section 4(f), but is omitted from section 40, and its omission in the latter section was apparently intentional, for a mortgage of all the corporation's property does not contemplate or necessarily require that it should cease business and, if made with an honest intent, would be to further the purposes of the corporation. In this case there is no question of a fraudulent purpose. The mortgage was made to further the interests of the corporation in the conduct of its business.

In view of the foregoing I am of the opinion that the power vested in the corporation to mortgage its property is to be exercised by the board of directors, whether the mortgage be of the whole or any part of its property, and that the mortgage in question was duly authorized by the vote of the directors.

The remaining question is whether the petitioner has a right to the balance of the fund derived from the sale of the mortgaged property, after satisfying the Marlin Rockwell mortgages and its mortgage of August 23, as security for the payment of the two notes of August 1,

1919, for $25,000 each, and the note of August 19, 1919, for $8,247.42, by virtue of a collateral stipulation contained in the note of August 23, or by virtue of a like stipulation contained in the prior notes of August 1 and August 19.

The petitioner claims that about four days prior to the appointment of the receivers it took possession of all the property of the corporation for the purpose of foreclosing its mortgage, and that it continued in possession and control of the property down to the appointment of the receivers, when it surrendered possession to the receivers, having first procured the insertion in the decree appointing the receivers the following stipulation:

"That the Commerce Trust Co. surrender to the receiver such possession as it may have acquired of the property of the respondent under mortgage held by it without prejudice to such rights as it may have acquired by virtue of such possession."

That this stipulation preserved and was intended to preserve whatever possessory rights it had acquired in its attempted foreclosure, not only for the purpose of perfecting its security under the mortgage but for the purpose of acquiring security to be applied in satisfaction of the notes of August 1 and August 19; one of the collateral stipulations in the mortgage note and in the prior notes being as follows:

"Collateral security and collateral as used herein mean not only the above-described collateral, but all other property of whatever kind or nature of the undersigned, or in which the undersigned has an interest, which is, or may, at any time be under the control of the holder by virtue of this agreement, or otherwise; obligations as herein used mean not only the principal and interest of this obligation, but of all other obligations and liabilities of whatever nature at any time due by the undersigned, or by the indorser or indorsers, or guarantor or guarantors hereof (or of the individual members of the undersigned) to the holder hereof, or to become due whether heretofore or hereafter contracted."

[2] It is objected on the part of the receivers: (1) That under the vote of the board of directors of August 22, the president of the corporation was not authorized to give a note containing a stipulation whereby the mortgaged property, should it come into the control of the mortgagee, might be held as collateral security for prior notes or future obligations; that he was authorized to borrow a sum not exceeding $25,000, with a discretion as to the rate of interest and the time of payment, and to mortgage all the property of the corporation to secure that loan only; that a certified copy of the vote of the board authorizing the loan and mortgage was delivered to it at the time the negotiation took place, and that it knew the limitations placed upon the president's authority in procuring the loan and giving the mortgage. And I find and rule that such was the case and that this collateral stipulation in the mortgage note is without force and validity. This finding and ruling is based on two assumptions: (1) That the petitioner in its attempted foreclosure took and retained actual possession and control of the property and held the same down to the date of the appointment of the receivers, and (2) that it was understood and intended by the provision above quoted from the decree that any possession which

it had obtained of the mortgaged property might be availed of by it, not only to perfect its lien under the mortgage (which covered after-acquired property), but to assert a lien as security for the prior notes.

[3] I do not think that the above-quoted provision in the decree was intended to cover or should be construed as reserving any right in the petitioner to the fund derived from the sale of the mortgaged property as security for the three notes of August 1 and August 19 or any other obligation than the one secured in the mortgage. It was not brought to the attention of the court at the time the receivers were appointed that the petitioner claimed the right to assert a lien on the mortgaged property as security for these earlier notes, and no claim of the kind was made until a year or more after the appointment of the receivers, when this petition was filed. If such a claim had been made at the time the hearing was in progress asking for the appointment of receivers, in which this petitioner participated, I am very sure that its assertion would have been regarded as sufficient ground for refusing the receivership, for the court required the withdrawal of the attachment placed by a creditor upon the property some fifteen days before the appointment of receivers before entering the decree.

[4] Neither am I able to find that the petitioner ever obtained actual possession and control of the property covered by the mortgage. Some 15 days prior to the time the petitioner undertook to foreclose its mortgage, all the property of the corporation was attached in a suit brought by a creditor of the corporation, and at the time of the attempted foreclosure the sheriff and his keepers were in the exclusive possession and control of the property under the attachment and so continued down to the time of the appointment of the receivers. The petitioner never dispossessed the sheriff and his keepers, but went to the premises where the mortgaged property was located and notified the mortgagor that it was there to take possession and foreclose its mortgage. Later, with the knowledge and permission of the sheriff, the petitioner, for the purpose of continuing and maintaining on its behalf and subject to the attachment the possession which it claims to have taken under its mortgage, employed in their private capacity the persons who were then employed by the sheriff as keepers. This may have been sufficient to answer the requirements of delivery and rentention of possession by a mortgagee under Revised Laws of Massachusetts, c. 198, § 1, to perfect the petitioner's rights in after-acquired property covered by the mortgage, had there been any. But I find and rule that it did not vest in the petitioner such control of the property as would entitle it to hold the same as security under the terms of the collateral stipulations contained in the notes of August 1 and August 19.

[5] I further find and rule that if the petitioner in its attempted foreclosure acquired exclusive control of the property, it was not entitled, notwithstanding the collateral stipulations in the notes of August 1 and August 19, to hold the property as security for these notes, as the mortgage of August 23 not only provided that, on the payment of the $25,000 secured by the mortgage and of the interest, "this deed as also the aforesaid note shall be void," but also that "upon any default in

the performance or observance of the foregoing condition" the mortgagee might sell the property at auction, and out of the money arising from the sale "retain all sums then secured by this mortgage, whether then or thereafter payable, including all costs, charges, and expenses incurred or sustained by it or them in relation to the said property, or to discharge any claims or liens of third persons affecting the same; rendering the surplus, if any, to grantor or its successors, or assigns." The petitioner, had it sold the property for condition broken, would have been required after satisfying the mortgage, including the expenses incurred in relation to the sale and the discharge of the Marlin Rockwell mortgages, to pay the surplus to the mortgagor. This stipulation supplanted any prior stipulations in the notes of August 1 and August 19 so far as the property covered by the mortgage of August 23 is concerned and disentitled the petitioner to a lien on the surplus to secure these prior notes, if in its absence it would have been entitled to one.